# In the District Court of the United States
## For the District of South Carolina
### CHARLESTON DIVISION

| | | |
|---|---|---|
| Derrick Izzard, Sr., | ) | Civil Action No. 2:05-0239-CWH-GCK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| BellSouth Telecommunications, Inc., | ) | **OF THE MAGISTRATE JUDGE** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

The Plaintiff, Derrick Izzard, Sr., has filed this action against his former employer, BellSouth Telecommunications, Inc., alleging age discrimination under the Age Discrimination in Employment Act of 1967, as amended (the "ADEA"), and retaliatory discharge, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e.

This Court has original jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1343.  Venue is proper because the alleged events giving rise to this action occurred in this District and Division.  28 U.S.C. § 1391.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(g), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 2000e, *et seq*. and 29 U.S.C. §§ 621-634, and submit findings and recommendations to the District Court.

## II.    STIPULATED FACTS

By Order of the Court, the parties have stipulated to the following facts, as set forth in their Joint Factual Brief [36-1]:

1.   Derrick Izzard ("Plaintiff" or "Izzard") is a former BellSouth employee who claims that he was involuntarily terminated because of his age (47 at the time of discharge).  Plaintiff's date of birth is August 3, 1956.  (Plt. Dep. 6)[1]

2.   BellSouth hired Izzard in February 1999 and terminated his employment on July 27, 2004.  (Plt. Dep. 13, 136)

3.   Throughout Izzard's employment with BellSouth he was a Machine Operator, a position covered by the collective bargaining agreement between BellSouth and the Communications Workers of America ("CWA").  (Plt. Dep. 25)

4.   Plaintiff worked within the Utility Operations Division of BellSouth.  (Plt. Dep. 24-25)  Throughout Plaintiff's employment with BellSouth, his immediate supervisor was Alvin Abney, Network Manager ("Abney").  (Plt. Dep. 111)

5.   Abney is 57 years old and has been employed by BellSouth for 29 years.  (*See* Declaration of Alvin Abney at ¶¶ 2, 4, attached hereto as Ex. B)  Abney typically supervises sixteen employees.  (*Id*. at ¶ 6)

6.   Abney and his immediate supervisor, Gary Schulman ("Schulman"), were the BellSouth managers who hired Plaintiff.  (Plt. Dep. 29, 102)  Plaintiff was 42 years old when Abney and Schulman hired him to work at BellSouth.  (*Id*. at 6, 102)  Abney and Schulman were aware of Plaintiff's age (over 40) when they hired him.  (*Id*. at 102)

7.   The decision to terminate Plaintiff's employment was made by Abney and Schulman. (Abney Decl. ¶ 7)

8.   Abney and/or Schulman are the only BellSouth managerial employees who Plaintiff

---

[1]    A copy of Plaintiff's Deposition is attached to Defendant's Motion for Summary Judgment as Exhibit A.

has accused of unlawful age discrimination.[2]  (Plt. Dep. 29-30)

9.  Throughout Izzard's employment with BellSouth, an attendance and punctuality policy was in place, and it required employees to be at work as scheduled.  (Plt. Dep. 34-35; Abney Decl. ¶ 9)  All employees who reported to Alvin Abney, including Izzard, were well-aware of the attendance and punctuality policy.  (Id.)

10.  During Izzard's employment with BellSouth, he exhibited a recurring deficiency in the area of work attendance.  (Plt. Dep. 35; Abney Decl. ¶ 8)  Izzard was counseled formally and informally numerous times regarding his unsatisfactory attendance.  (Id.)

11.  Prior to Izzard's termination on July 27, 2004, BellSouth's disciplinary records on Izzard included, and were not limited to, the following:  Letter in Lieu of Suspension[3] dated February 27, 2004 due to failure to follow a direct order; Suspension issued August 14, 2002 due to unsatisfactory attendance; Suspension issued March 12, 2002 due to unsatisfactory attendance; Suspension issued August 28, 2002 due to failure follow instructions; Suspension issued July 14, 2000 due to unsatisfactory attendance; formal counseling issued April 26, 2000 due to safety violation; formal counseling issued March 10, 2000 for failure to complete paperwork; formal warning issued July 30, 1999 due to unsatisfactory attendance; and a formal

---

[2]    In response to South Carolina Human Affairs Commission inquiries, Plaintiff listed only Alvin Abney as having discriminated against him – Plaintiff did not identify Schulman as a bad actor.  (Plt. Dep. 90; see also SCHAC Employment Initial Inquiry Questionnaire at 4, attached as Ex. 17 to Plaintiff's deposition).

[3]    A letter in lieu of suspension is a disciplinary tool used by BellSouth that is intended to have the same force and effect as a traditional suspension, but without depriving the transgressor of work hours or compensation.  (Plt. Dep. 62-63)

counseling issued July 1, 1999 due to unsatisfactory attendance.[4]  (Abney Decl. ¶ 10; Plt. Dep. 48-51, 54-57, 61-63, 119-20, 122-25, 127)

12.    After being suspended in February 2004 because of unsatisfactory attendance, Izzard continued to accrue unexcused absences and tardies, including, but not limited to, the following: 2/24/04 called in sick (8 hours); 5/10/04 called in sick (8 hours); 6/01/04 called in sick (8 hours); 7/12/04 reported to work 30 minutes late; 7/19/04 called in sick (8 hours).  (Abney Decl. ¶ 12)

13.    After Izzard accrued additional unexcused absences since being suspended in February 2004, BellSouth terminated Izzard's employment on July 26, 2004.  (Plt. Dep. 63)

14.    At all pertinent times, BellSouth has had in place a no-fault attendance policy, which means that all absences that were not taken as part of an approved leave of absence were counted against an employee's attendance record and the employee could be disciplined based on his attendance record up to and including discharge.  (Abney Decl. ¶ 13; Plt. Dep. 34-35).

15.    BellSouth policy requires that days in which an employee calls in sick be recorded as sick time, not excused personal leave or any other type of excused personal leave.[5]  (Plt. Dep. 65; Abney Decl. ¶¶ 13-14)

16.    On July 19, 2004, Plaintiff called in sick, claiming that he was experiencing leg cramps.  (Plt. Dep. 63-64)  When Plaintiff called in, Abney told Plaintiff that he was going to code the absence as "I" which is an unexcused sick day.  (Plt. Dep. 68)  Plaintiff reported this

---

[4]      The 3/12/02 and 8/14/02 suspension entries on Izzard were originally termination entries. Those entries were reduced to suspensions pursuant to grievance negotiations with the Communications Workers of America.  (Abney Decl. ¶ 11; Plt. Dep. 55, 57-58, 60-61)

[5]      Plaintiff alleges that at times Abney "bent the rules" and allowed employee sick days to be counted as what Plaintiff calls "excused DP time."  (Plt. Dep. 64-65)  Abney allegedly bent the rule for Plaintiff as well as other employees.  (*Id.* at 64-65, 103)

scenario under oath at page 5 of his SCHAC questionnaire attached to Plaintiff's Deposition as Exhibit 13. (Plt. Dep. 68-69)

17.  Plaintiff does not know whether other employees were given excused time off when they called out sick.  (Plt. Dep. 38-39)

18.  Plaintiff admits that vacation time required approval in advance of the time taken off. (Plt. Dep. 38)

19.  According to Plaintiff, he and other employees were allowed to take personal leave for emergencies, which Plaintiff refers to as excused "DP" time.  (Plt. Dep. 38)

20.  During Izzard's employment, Abney supervised three employees younger than Plaintiff whose attendance records were unsatisfactory.  (Abney Decl. ¶ 15)  Those employees were George Alford, Carey Brisbane and Jason Theobald.  *Id*.  Like Izzard, Alford and Brisbane were involuntarily terminated due to poor attendance.  (Plt. Dep. 40-41; Abney Decl. ¶ 15) Alford's date of birth is August 21, 1980 and Brisbane's date of birth is February 1, 1962. (Abney Decl. ¶ 15)  After receiving a letter in lieu of suspension due to attendance, Theobald voluntarily terminated his employment in August 2004.  (Abney Decl. ¶ 15; Plt. Dep. 42-43)

21.  Plaintiff does not know the name of any BellSouth employee who had an attendance record that was worse than Plaintiff's attendance record in year 2003.  (Plt. Dep.  41-42)

22.  Other than Jason Theobald (who resigned after receiving a letter in lieu of suspension due to poor attendance) Plaintiff does not know the name of any BellSouth employee who had an attendance record that was worse than Plaintiff's attendance record in 2004.  (Plt. Dep. 42-44)

23.  During Izzard's employment, Steven Jiles also worked under Abney.  Jiles' date of

birth is July 19, 1943, thirteen years older than Plaintiff. (Abney Decl. ¶ 18; Plt. Dep. 94-97, 100-01) Notwithstanding his age, Jiles was one of the best crew-persons Abney had insofar as attendance and performance were concerned. In 2003 and 2004, Abney rated Jiles as a "Major Contributor" in his group. (*Id*.)

24. During Izzard's employment with BellSouth, he was in the unit of employees covered by the CWA/BellSouth collective bargaining agreement. (Plt. Dep. 25) Subsequent to BellSouth's termination of Izzard, he filed a grievance through his labor union (Communication Workers of America) contending that the termination was not for just cause. (*Id*. at 86) The Union refused to pursue Plaintiff's grievance through arbitration because the Union believed that the grievance lacked merit and that Plaintiff would have "no chance" of prevailing at arbitration. (*Id*., *quoting* 1/3/05 letter from CWA to Plaintiff attached to Plaintiff's Deposition as Ex. 15)

25. During Plaintiff's employment with BellSouth, he was aware of company policies prohibiting discrimination in the workplace. (Plt. Dep. 28) Plaintiff did not, however, file any internal complaints alleging age discrimination. (*Id*. at 28-29)

26. On May 22, 2004 the Plaintiff filed a Charge of Discrimination with the South Carolina Human Affairs Commission alleging discrimination based on age.

27. On July 26, 2004 the Plaintiff was discharged by Defendant BellSouth.

28. On August 21, 2004 the Plaintiff filed a second Charge of Discrimination against the Defendant alleging retaliatory discharge.

29. On October 28, 2004 the Plaintiff received his Dismissal and Notice of Rights from the U.S. Equal Employment Opportunity Commission.

30. The Plaintiff timely filed this action.

### III.    PLAINTIFF'S STATEMENT OF FACTS ALLEGED TO BE IN CONTROVERSY AND THE DEFENDANT'S RESPONSES

Pursuant to the Court's Order, Plaintiff has submitted the following statement of facts believed to be in controversy (the "Statement") and the Defendant has submitted its corresponding responses (the "Responses") thereto:

**Plaintiff's Statement # 1:**  Plaintiff was not allowed the use of a personal day of leave in violation of company policy while other employees were allowed the use of such a day of leave. (Plt. Dep. 38, lines 1-24)

**Defendant's Response to Plaintiff's Statement # 1:**  This statement by Plaintiff is entirely based on conjecture, unsubstantiated personal belief, and inadmissible hearsay. Additionally, according to Plaintiff he and other employees were sometimes permitted to use what Plaintiff describes as excused "DP time" when they called in sick.  Thus, to the extent that DP time was sometimes allowed, Plaintiff and his co-workers were treated equally.  The following language that appears beginning on the same page as the deposition testimony cited by Plaintiff proves these points:

**Q.**  What is DP time?

**A.**  Personal time.

**Q.**  Now, DP time has to be approved beforehand, correct?

**A.**  No, as far as I know.

**Q.**  All right.  And when you say as far as you know, what do you mean?

**A.**  Other fellows got it, they just call in.  They didn't come to work.  They called in, asked for either use their vacation time or their DP time.

**Q.**  Now, so you're telling me that other employees didn't have sick absences counted against them.

**A.**  I don't know about that, but they used their DP time.

**Q.** How do you know?

**A.** They told me.

**Q.** [H]ave you ever been given DP time when you called in sick?

**A.** Yes.

**Q.** And Mr. Abney would give that to you?

**A.** Yes.

**Q.** And do you know if Mr. Abney ever refused to give DP time to the other employees when they were sick.

**A.** No.

**Q.** You don't know one way or the other?

**A.** I don't . . . .

(Plt. Dep. 38-39)  As more fully discussed in Defendant's Summary Judgment Memorandum at pages 10-11 and 14-16, Plaintiff cannot defeat summary judgment based on hearsay and/or speculation regarding alleged favorable treatment of others.

**Plaintiff's Statement # 2:**  Plaintiff's work was constantly scrutinized while younger employees under the age of 40 did not have their job performance so scrutinized.  (Plt. Dep. 103, lines 20-25, 104, lines 1-5)

**Defendant's Response to Plaintiff's Statement # 2:**  Plaintiff's personal belief that Alvin Abney "scrutinized" Plaintiff's work more than he scrutinized the work of others does not create an issue of fact.  The sole basis for Plaintiff's contention that he was "scrutinized" more than others is Plaintiff's belief that he deserved better performance evaluations.  (Plt. Dep. 103-04)  As more fully discussed at pages 16-18 of Defendant's Summary Judgment Memorandum, Plaintiff's personal belief that he deserved higher performance ratings from Abney is irrelevant to the ultimate question at hand, which is whether Abney believed that Plaintiff's attendance was

unsatisfactory and warranted termination.[6]  *Wright v. North Carolina Dept. of Health & Human Serv.*, 405 F.Supp.2d 631, 656-37  (E.D.N.C. 2005) (it is the employer's state of mind that is pertinent, not the belief of the plaintiff or other non-decision makers), (*citing King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (plaintiff's belief that he was meeting employer's legitimate job expectations held irrelevant)); *see also Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996) ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff").

**Plaintiff's Statement # 3:**  On July 19, 2004 the Plaintiff missed work due to illness.  He reported that he was sick and requested the use of a sick day or one of his personal days as required by the Defendant's employment procedures.  He left the message on the supervisor's answering machine that he was sick and desired to use a personal day.  He was later told that he could count the day off as "personal time."  Afterward, he was told by his supervisor, Abney, that the day off was disallowed and would be recorded as "unexcused absence."  He was denied use of the day off even though he had time off available to him.  Other employees were allowed to use personal time as sick time.  (Plt. Dep. 102, lines 14-25; 103, lines 1-4)

**Defendant's Response to Plaintiff's Statement # 3:**  Plaintiff's Statement No. 3 is substantively the same as Plaintiff's Statement No. 1.  Therefore, Defendant incorporates its Response to Statement No. 1 herein by reference.  The deposition pages referenced by Plaintiff

---

[6]    Plaintiff's 60-year old co-worker, Steven Jiles, routinely received high performance ratings from Abney.  (Plt. Dep. 100)  Abney considered Jiles a "major contributor" to the group based on his superior performance.  *(See* Declaration of Alvin Abney at ¶ 18, attached to Defendant's Summary Judgment Memorandum as Ex. B).  Abney's routinely high rating of Jiles (who was 13 years older than Plaintiff) belies any notion that Abney was motivated by unlawful age discrimination.  Abney himself is 8 years older than Plaintiff.  (Abney Decl. ¶ 4; Plt. Dep. 6).

at the end of Statement No. 3 (102-103) do not provide a factual basis for the facts contained in Statement No. 3.  Federal Rule of Civil Procedure 56(c) requires the party opposing a summary judgment motion to identify evidence in the record disputing Defendant's evidence.

The deposition pages cited by Plaintiff show that Plaintiff was hired by Alvin Abney and Abney's former supervisor Gary Schulman.  Abney and Schulman are the same persons who made the decision to terminate Plaintiff's employment.  As more fully discussed at pages 12 through 14 of Defendant's Summary Judgment Memorandum, the Fourth Circuit recognizes a "strong inference" of non-discrimination when the person who hired the plaintiff is the same person who fired the plaintiff.  *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991).  The deposition pages cited by Plaintiff also reflect Plaintiff's testimony that Abney sometimes "relaxed" the attendance rules for employees, Plaintiff included.  This is not evidence of disparate treatment.

**Plaintiff's Statement # 4:**  The Defendant did not allow the Plaintiff the use of either a sick day or a personal leave day as requested even though Plaintiff was entitled to use either. (Plt. Dep. 36, line 1-25, 37, lines 1-2)  At the time of his discharge Izzard had leave available for his use.  (Plt. Dep. 69, lines 11-16)  Izzard requested leave time to attend to leg cramps and contacted his superior Alvin Abney.  (Plt. Dep. 68, lines 4-25; 68, lines 1-16)  However, Abney refused to allow the Plaintiff to use his available leave and instead marked him "I" (for illness). (Plt. Dep. 68, lines 15-18; Plt. Dep. 71, lines 1-24)

**Defendant's Response to Plaintiff's Statement # 4:**  Plaintiff's personal belief that Alvin Abney was "required" to allow him to take "DP" (excused) time on July 19, 2004 is entirely self-serving and unsupported by anything in the record.  Plaintiff cannot defeat summary judgment based on unsupported speculation.  Plaintiff has not identified any BellSouth policy,

rule or other evidence supporting Plaintiff's belief.  More importantly, Plaintiff has not identified

any similarly situated person under 40 years old or younger than Plaintiff who received more

favorable treatment.  This crucial point (which alone destroys Plaintiff's case entirely) is

illustrated by the following excerpt from Plaintiff's deposition:

> **Q.**  Did anybody in your work group have a worse attendance record than yours [w]as in 2003?
>
> **A.**  In 2003?
>
> **Q.**  Yes.
>
> **A.**  Yes.
>
> **Q.**  Who?
>
> **A.**  I can't recall.  (Plt. Dep. 41-42)
>
> **Q.**  Do you know whether anybody in your group had an attendance record . . .that was worse than yours in 2004?
>
> **A.**  Yes.
>
> **Q.**  Who?
>
> **A.**  I can't recall.  Jason had a bad record.
>
> **Q.**  Was his record worse than yours?
>
> **A.**  Yes.
>
> **Q.**  You talking about Jason Theobold?
>
> **A.**  Yeah.
>
> **Q.**  The guy who got himself fired for attendance?
>
> **A.**  Yes . . . . (Plt. Dep. 43)

Jason Theobold is the only co-worker identified by Plaintiff who allegedly received more

favorable treatment.  The record reflects, however, that Theobold was terminated for poor

attendance just like Plaintiff was terminated.  *Id.*

**Plaintiff's Statement # 5:**  Izzard was fired promptly after the Defendant became aware

of his action in bringing the complaint with the South Carolina Human Affairs Commission

("SCHAC").  (Exhibit 16, Plt. Dep.; Exhibit 14, Plt. Dep.).

**Defendant's Response to Plaintiff's Statement # 5:**  There is no evidence that

BellSouth terminated Plaintiff's employment "promptly" after he filed a charge of discrimination

with the SCHAC.  BellSouth's termination of Plaintiff's employment was based on Plaintiff's

poor attendance at work.  (Abney Decl. ¶¶ 5-15)  As discussed in Defendant's Summary

Judgment Memorandum at pages 20 through 21, there is no evidence of a causal connection

between Plaintiff's SCHAC charge and this termination that occurred two months later.

**Plaintiff's Statements # 6 and 7:**  BellSouth terminated Izzard in March of 2002 for

poor attendance but the termination was reversed after a union grievance procedure.  (Plt. Dep.

54, lines 22-25; 55, lines 1-8)  Izzard returned to work on August 6, 2002.  (Plt. Dep. 56, line 8-

12)  He was fired again within the week of his return on August 14, 2002.  (Plt. Dep. 57, lines 4-

15)  The second firing was also subjected to a union grievance procedure and reversed.  (Plt.

Dep. 58, lines 19-24)

**Defendant's Response to Plaintiff's Statements # 6 and # 7:**  Plaintiff's Statement

Nos. 6 and 7 refer to employment actions that were negotiated down to lesser discipline (via

Grievance negotiations with Plaintiff's labor union, Communications Workers of America) two

years before the termination that forms the basis for the instant case.  The facts surrounding

those old employment actions are entirely irrelevant to the facts surrounding Plaintiff's

termination that occurred in July 2004.  Events that occurred two years before the termination at

issue are immaterial and cannot create a genuine issue of fact to be tried.

**Plaintiff's Statement # 8:**  BellSouth maintains that Izzard was issued a letter in lieu of

suspension on October 15, 2003, however, Izzard has no recollection of receiving it.  (Plt. Dep. 61-62)

**Defendant's Response to Plaintiff's Statement # 8:**  Although Plaintiff "does not recall" receiving a letter in lieu of suspension on October 15, 2003, Plaintiff does not deny receiving that discipline.  (Plt. Dep. 62-63)

**Plaintiff's Statement # 9:**  The Plaintiff received a positive evaluation for the year 2003 (last year available).  (Exhibit 12 Plt. Dep.)

**Defendant's Response to Plaintiff's Statement # 9:**  Plaintiff's Statement # 9 describes Plaintiff's 2003 annual performance review as a "positive evaluation."  Plaintiff seems to ignore, however, that Abney gave Plaintiff the lowest possible rating in the area of "Dependability" and also a "less than satisfactory" rating in the areas of "Teamwork, Attitude and Contribution to Work Group."  (Ex. 12 to Plt. Dep.)  Because Plaintiff was rated less than satisfactory on about half of his 2003 performance review, Defendant disagrees with Plaintiff's characterization of the review as "positive."

**Plaintiff's Statement # 10:**  The Defendant's termination of the Plaintiff was retaliatory discharge in response to his filing a complaint with SCHAC.

**Defendant's Response to Plaintiff's Statement # 10:**  Plaintiff's Statement # 10 contains no citation to the record.  As such, Federal Rule of Civil Procedure 56(c) requires that the fact statement receive no consideration.  Plaintiff cannot create an issue of fact based on unsupported personal belief.  As shown in Defendant's Summary Judgment Memorandum, Plaintiff's retaliation claim fails.

## IV.    PROCEDURAL HISTORY

On January 25, 2005, Plaintiff filed this action *pro se,* alleging that the Defendant terminated him in retaliation for filing an age discrimination case with the SCHAC. [1-1]  The Defendant answered the complaint on May 11, 2005, denying the allegations and setting forth numerous defenses. [8-1]  After Plaintiff retained counsel, an Amended Complaint was filed (with the consent of the Defendant) which set forth causes of action titled as age discrimination under the ADEA and retaliation under Title VII.[7] [24-1; 25-1]  The Defendant filed its answer to the Amended Complaint on September 23, 2005. [28-1]

Thereafter, the Defendant moved for summary judgment pursuant to Rule 56 and filed a memorandum in support thereof. [29-1; 29-2]  On April 12, 2006, the undersigned issued an Order instructing the parties to file a Joint Factual Brief in order to assist the Court in determining those genuine issues of material fact that were disputed by the parties. [30-1]  The Plaintiff filed his Objection to Defendant's motion for summary judgment [34-1] and on May 30, 2006, the parties submitted their Joint Factual Brief to this Court.  Thus, the matter is ripe for review by the undersigned.

## V.    SUMMARY JUDGMENT STANDARD

When a party has moved for summary judgment, the judgment sought shall be rendered forthwith if:  "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the movant must demonstrate that:  (1) there is no genuine issue as to any material fact and (2) he is entitled to judgment as a matter of law.  As to the first

---

[7]  The first cause of action, titled "Age Discrimination - Title VII" alleged that Defendant's actions constituted a willful violation of 29 U.S.C. § 623.  [24-1 at 4]

of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of such material fact is "genuine" if the evidence so offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). In reviewing the Defendant's motion for summary judgment, the court is obliged to view the facts, and the reasonable inferences to be drawn therefrom, in the light most favorable to the Plaintiff, as the non-moving party. *See Baqir v. Principi*, 434 F.3d 733, 741 (4th Cir. 2006).

## VI.    ANALYSIS

### A.  Plaintiff's Claim of Age Discrimination

As discussed above, Plaintiff's Amended Complaint alleges a claim of age discrimination under Title VII, but also refers to the ADEA, codified at 29 U.S.C. § 623. (Plt. Am. Comp. [24-1] ¶¶ 13-17) Defendant stated in its answer to Plaintiff's Complaint: "Title VII does not prohibit age discrimination[.]" (Def. Answer [28-1] at ¶ 19) The Defendant is correct in this regard. "Title VII is limited to discrimination based on race, color, religion, sex, or national origin." *Taylor v. Brown*, 928 F.Supp. 568, 573 (D.Md. 1995), *citing* 42 U.S.C. § 2000e-2(a)(1), *case aff'd*, 86 F.3d 1152 (4th Cir. 1996) (*per curiam*) (Table). "Age is not an appropriate basis of discrimination under Title VII." *Taylor*, 928 F.Supp. at 573, *citing Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 465 n. 4, 102 S.Ct. 1883, 1889 n. 4, 72 L.Ed.2d 262 (1982). Because Title VII does not prohibit age discrimination, it does not provide a remedy for age discrimination.

*See, e.g., Laney v. Morgan State University*, 2005 WL 1563437 at *3 (D.Md. June 30, 2005).

Thus, Plaintiff's complaint of age discrimination fails to state a claim under Title VII. *See*

*Blankenship v. City of Portsmouth*, 372 F.Supp. 2d 496, 500 (E.D. Va. 2005).

Accordingly, Defendant's memorandum in support of its motion for summary judgment

does not address Plaintiff's age discrimination claim under Title VII, but addresses his

allegations in light of whether Plaintiff has stated a cause of action under the ADEA.

In the present case, Plaintiff's entire argument regarding his claim under the ADEA

consists of the following:

> The framework established in *McDonald [sic]-Douglas v. Green*, 411 U.S. 792, applies to this ADEA case. To prevail in a suit under the ADEA, Izzard must prove that he would not have been discharged but for BellSouth's discriminatory intent. *See Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 233 (4th Cir. 1991). (Plt. Obj. [34-1] at 3).

Plaintiff fails to provide any further discussion that would aid the court in determining

whether he was discriminated against under the ADEA. Accordingly, the Court is inclined to

consider Plaintiff's ADEA claim as abandoned. However, even were this Court to assume that

Plaintiff did not intend to abandon his ADEA claim, it nevertheless appears that his claim

alleging age discrimination is without factual basis and therefore cannot survive Defendant's

motion for summary judgment.

The ADEA forbids employers from "discharging] any individual . . .because of such

individual's age[.]" 29 U.S.C.A. § 623(a)(1). To establish a prima facie case of unlawful age

discrimination under the ADEA, a plaintiff may either offer direct evidence of discrimination, or

prove four elements to make out a prima facie case: (1) he is a member of the protected class;

(2) he was qualified for the job and met the employer's legitimate expectations; (3) he was

discharged despite his qualifications and performance; and (4) following his discharge, he was

replaced by a substantially younger individual with comparable qualifications. *Warch v. Ohio Cas. Ins. Co.,* 435 F.3d 510, 513 (4ᵗʰ Cir. 2006), *citing O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-13, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996); *Causey v. Balog*, 162 F.3d 795, 802 & n. 3 (4th Cir. 1998).  If the plaintiff establishes a prima facie case, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the termination. *Warch*, 435 F.3d at 513-514, *citing Mereish v. Walker,* 359 F.3d 330, 334 (4th Cir. 2004).  At this point, the employer's burden "is one of production, not persuasion; it can involve no credibility assessment."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (internal quotation marks omitted).  If the employer meets this burden, "the presumption of discrimination created by the prima facie case disappears from the case" and the plaintiff must prove that the "proffered justification is pretextual." *Mereish*, 359 F.3d at 334; *see also Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

In the present case, Plaintiff has not offered direct evidence of discrimination.  Thus, to prove his case by indirect evidence, he must meet the four prongs of the indirect-discrimination test.  First, because of his age, has established that he is a member of a protected class under the ADEA.  However, Plaintiff cannot show, under the facts of this case, that he meets the second or third prongs of the test, *viz.*, that he was qualified for the job and met the employer's legitimate expectations, and that he was discharged despite his qualifications and performance.

To be "qualified" for the job, an ADEA plaintiff must show that he was meeting the "employer's legitimate job expectations."  *Warch*, 435 F.3d at 514, *citing Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 298) (4th Cir. 2004) (en banc) (the employee "failed

to establish a prima facie case of age discrimination because by her own admissions . . . she has failed to demonstrate that she was performing her job duties at a level that met [the employer's] legitimate expectations[.]").  Under the facts of this case, it cannot be disputed that Plaintiff failed to meet the Defendant's legitimate expectations with respect to his job duties.  Plaintiff acknowledged in his deposition that an essential requirement of his job as a Machine Operator was to maintain satisfactory attendance.  (Plt. Dep. 34-35, *see also* Machine Operator Job Description at p. 2., attached to Def. Mem. [29-2])  Indeed, case law also recognizes that consistent attendance at the workplace is presumed to be a requirement of almost any job.  *See, e.g., Tyndall v. Nat'l Educ. Ctr. of Calif.*, 31 F.3d 209, 213 (4th Cir. 1994) ("[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual" because a "regular and reliable level of attendance is a necessary element of most jobs") (*citing Carr v. Reno*, 23 F.3d 525, 529 (D.C.Cir. 1994) (holding that "coming to work regularly" is an "essential function"); *Law v. United States Postal Serv.*, 852 F.2d 1278, 1279-80 (Fed.Cir. 1988) (holding that attendance is a minimum function of any job); *Walders v. Garrett*, 765 F.Supp. 303, 309 (E.D.Va. 1991) (holding that a "reasonably regular and predictable attendance is necessary for many [jobs]"), *aff'd*, 956 F.2d 1163 (4th Cir. 1992); *Santiago v. Temple Univ.*, 739 F.Supp. 974, 979 (E.D.Pa. 1990) ("attendance is necessarily the fundamental prerequisite to job qualification"), *aff'd*, 928 F.2d 396 (3d Cir. 1991)).

In this case, Plaintiff does not dispute that he failed to maintain a satisfactory attendance record, and he admits he received numerous formal and informal counseling and warnings regarding his attendance.  (Plt. Dep. 35)  Plaintiff further admits that he knows of no co-worker whose attendance was as poor as his was, and who remained employed.  (Plt. Dep. 41-43)

Because Plaintiff cannot provide any evidence that he was meeting Defendant's job expectations regarding regular attendance, Plaintiff cannot prove that he was qualified for the job. Moreover, Plaintiff cannot prove that he was "discharged despite his qualifications, because his unsatisfactory attendance rendered him unqualified for his job. Therefore, Plaintiff cannot establish the second and third prongs of a prima facie claim under the ADEA.

Even if Plaintiff could establish a prima facie case of discrimination under the ADEA by a preponderance of the evidence (which he most certainly cannot, given the facts of this case), Plaintiff's case nonetheless would fail because Plaintiff's employer, BellSouth, can produce a legitimate, non-discriminatory reason for the termination. *See Warch*, 435 F.3d at 513-514, *citing Mereish*, 359 F.3d at 334. As the Supreme Court stated in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the employer's burden at this stage "is one of production, not persuasion; it can involve no credibility assessment." (internal quotation marks omitted). If the employer meets this burden, "the presumption of discrimination created by the prima facie case disappears from the case" and the plaintiff must prove that the "proffered justification is pretextual." *Warch*, 435 F.3d at 514, *quoting Mereish*, 359 F.3d at 334; *see also Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

BellSouth argues that it terminated Plaintiff's employment because Plaintiff had a history of unsatisfactory attendance. In order to counter BellSouth's reason for termination, Plaintiff must present evidence sufficient for a reasonable trier of fact to conclude that the employer's reason is false and that unlawful age discrimination is the real reason for the termination, as the ultimate burden of proving intentional discrimination in employment remains on the plaintiff.

*Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) ("the burden of persuasion remains with the plaintiff throughout").  However, Plaintiff cannot forecast sufficient evidence for this court to conclude that BellSouth's reason was false, and that Plaintiff was discharged because of his age.  Indeed, as Plaintiff has admitted in the "undisputed facts" portion of the parties' Joint Factual Brief, "throughout [his ] employment with BellSouth, an attendance and punctuality policy was in place, and it required employees to be at work as scheduled."  (Joint Factual Brief Undisputed Fact # 9, *citing* Plt. Dep. 34-35 *and* Abney Dec. ¶ 9)  Furthermore, Plaintiff admits he was "well-aware of the attendance and punctuality policy."  *(Id.)*  In fact, Plaintiff admits that "[d]uring [his] employment with BellSouth he exhibited a recurring deficiency in the area of work attendance.  (Joint Factual Brief Undisputed Fact # 10, *citing* Plt. Dep. 35 *and* Abney Decl. ¶ 8)  Plaintiff also admits that he "was counseled formally and informally numerous times regarding his unsatisfactory attendance."  *(Id.)*  Prior to Plaintiff's termination on July 27, 2004, BellSouth's disciplinary records reflected both that he had a history of unsatisfactory attendance as well as a history of other disciplinary infractions, which included the following:  (1) A Letter in Lieu of Suspension  dated February 27, 2004 due to failure to follow a direct order; (2) Suspension issued August 14, 2002 due to unsatisfactory attendance; (3) Suspension issued March 12, 2002 due to unsatisfactory attendance; (4) Suspension issued August 28, 2002 due to failure follow instructions; (5) Suspension issued July 14, 2000 due to unsatisfactory attendance; (6) A formal counseling issued April 26, 2000 due to safety violation; (7) A formal counseling issued March 10, 2000 for failure to complete paperwork; (8) A formal warning issued July 30, 1999 due to unsatisfactory attendance; and (9) A formal counseling issued July 1, 1999 due to unsatisfactory attendance.  (Joint Factual Brief

Undisputed Fact # 11, *citing* Abney Decl. ¶ 10; Plt. Dep. 48-51, 54-57, 61-63, 119-20, 122-25, 127)  Even after being suspended in February 2004 because of unsatisfactory attendance, Plaintiff continued to accrue unexcused absences and tardy attendance, including, but not limited to the following:  2/24/04 called in sick (8 hours); 5/10/04 called in sick (8 hours); 6/01/04 called in sick (8 hours); 7/12/04 reported to work 30 minutes late; 7/19/04 called in sick (8 hours). (Joint Factual Brief Undisputed Fact # 12, *citing* Abney Decl. ¶ 12)  After Plaintiff accrued additional unexcused absences after being suspended in February 2004, BellSouth terminated Plaintiff's employment on July 26, 2004.  (Joint Factual Brief Undisputed Fact # 13, *citing* Plt. Dep. 63)

It is undisputed that Plaintiff had been disciplined numerous times, not only for unsatisfactory attendance, but also for a variety of other violations of BellSouth's rules.  Indeed, as Plaintiff testified, the only other person who had an attendance record as bad as, or worse than, Plaintiff's record (Jason Theobald) resigned after receiving a letter in lieu of suspension due to poor attendance.  (Joint Factual Brief Undisputed Fact # 20 and # 22; Plt. Dep. 41-43) Significantly, Theobald was younger than Plaintiff.  (Joint Factual Brief Undisputed Fact # 20) In addition, BellSouth terminated two other employees (Alford and Brisbane), both of whom were younger than Plaintiff, for poor attendance.  (Joint Factual Brief Undisputed Fact # 20; Plt. Dep. 40-41; Abney Decl. ¶ 15)  These undisputed facts completely undermine Plaintiff's argument that he was terminated on the basis of age, and instead support BellSouth's argument that it would terminated any person, regardless of age, due to an unsatisfactory attendance.  In short, BellSouth had a legitimate reason for termination.

As another reason for finding that Plaintiff was not subjected to unlawful discrimination,

the court notes that the same persons who hired Plaintiff (Abney and Schulman) and who knew of his age (42) at the time of hire, were the same persons who terminated him. The law recognizes that if the persons who hired the plaintiff are the same persons who terminated the plaintiff and the decision makers were aware of the plaintiff's protected classification when they hired him, then it is not reasonable to conclude that the decision makers were motivated by unlawful discrimination when they terminated the plaintiff. *See Proud v. Stone*, 945 F.2d 796, 797-98 (4th Cir. 1991). Thus, even if Plaintiff were able to prove a prima facie case, his age discrimination claim would fail under the rule articulated in *Proud.*

In conclusion, Plaintiff's claim under the ADEA fails because he cannot set forth a *prima facie* case of unlawful termination of his employment based upon his age. Plaintiff has not identified any evidence that would suggest to this court that the reason BellSouth terminated Plaintiff (unsatisfactory attendance) was false and that unlawful age discrimination was the true reason for termination. Accordingly, it is recommended that the Defendant be granted summary judgment on Plaintiff's claim of age discrimination.

## B. Plaintiff's Claim for Unlawful Retaliation

Plaintiff's charge of discrimination filed with SCHAC alleges discrimination based upon age, and retaliation. (Plt. Dep. 70 *and* Exhibit 14, p. 4) Plaintiff's Amended Complaint [24-1] alleges that BellSouth's termination of Plaintiff was in violation of the anti-retaliation provisions of Title VII. (Plt. Am. Com. [24-1] at ¶¶ 18-21)

Defendant agrees in its answer that "Title VII does not prohibit . . . a retaliation claim based on age." (Def. Answer [28-1] at ¶ 19) Defendant's Memorandum in support of its motion for summary judgment does not specifically discuss retaliation under Title VII; in fact,

Defendant's Memorandum does not mention Title VII.

Section 704(a) of Title VII states:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Title VII prohibits an employer from discriminating against an employee in retaliation for that employee's opposition to, or complaint about, an employment practice made unlawful under Title VII.  *See* 42 U.S.C. § 2000e-3(a).  "[T]o establish a prima facie case of retaliation under Title VII, Plaintiff must show that: (1) he engaged in a protected activity; (2) Defendant took an adverse employment action against him; and (3) a casual connection existed between the protected activity and the adverse employment action.  *Crosby v. City of Walterboro, S.C.*, — F.Supp.2d —, 2006 WL 1663786 at *3 (D.S.C. June 2, 2006) (footnote omitted), *citing VonGuten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001); *Gibson v. Old Town Trolley Tours of Washington, D.C., Inc.*, 160 F.3d 177, 180 (4th Cir. 1998).  Protected activities may include 'opposition' or 'participation' activities.  *Crosby*, 2006 WL 1663786 at *3, *citing Kubicko v. Ogden Logistics Services*, 181 F.3d 544, 512 (4th Cir. 1999); 42 U.S.C. § 2000e-3 (a) (prohibiting discrimination against an employee for opposition to an unlawful employment practice or because the employee has made a charge or participated in an investigation under the statute).

In the present case, Plaintiff participated in a "protected activity" when he filed his charge of discrimination with SCHAC.  Plaintiff further alleges that thereafter, he was discharged in retaliation for filing his charge with SCHAC.  Plaintiff's case fails, however, because he cannot show that there is any causal connection between his first SCHAC charge and

the termination.  BellSouth has presented evidence showing that Plaintiff had an ongoing

problem with unsatisfactory attendance.  Plaintiff's attendance problem started before he filed

his first SCHAC charge, and the attendance problems continued after he filed that charge.

(Abney Decl. ¶¶ 8-10)  As discussed above, three of Plaintiff's younger co-workers who had

poor attendance (George Alford, Carey Brisbane and Jason Theobold) also were terminated.

(Abney Decl. ¶ 15)  The evidence in this case shows that BellSouth terminated Plaintiff's

employment due to unsatisfactory attendance, not because of Plaintiff's age.  Plaintiff has

presented no evidence other than personal belief in support of his retaliation claim, and thus fails

to set forth a prima facie case of retaliatory discharge.

Certainly, the fact that an employee files a charge or internal complaint cannot alone

support a retaliation claim.  *See Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir. 1989).  In

*Williams*, the only evidence plaintiff could produce in support of her retaliation claim is the fact

that at the time she was fired her supervisors were aware that she had filed a discrimination

claim.  The Fourth Circuit held that "[p]lainly, mere knowledge on the part of an employer that

an employee it is about to fire has filed a discrimination charge is not sufficient evidence of

retaliation to counter substantial evidence of legitimate reasons for discharging that employee."

*Williams*, 871 F.2d at 457.  In the present case, the Plaintiff has failed to prove that BellSouth

retaliated against him, and thus BellSouth should be granted summary judgment on Plaintiff's

second cause of action.

### RECOMMENDATION

For the foregoing reasons, it is recommended that the Defendant's Motion for Summary

Judgment **[29-1] be granted.**

S/George C. Kosko
United States Magistrate Judge

August 24, 2006

Charleston, South Carolina